**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STEVEN NEIRA, | : | Civil No. 3:26-cv-2107 |
| Petitioner | : | (Judge Mariani) |
| v. | : | |
| WARDEN, LSCI-ALLENWOOD, | : | |
| Respondent | : | |

## MEMORANDUM

Petitioner Steven Neira ("Neira") initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Neira contends that the Federal Bureau of Prisons ("BOP") unlawfully refused to consider him for transfer to prerelease custody because he is subject to an immigration detainer imposed by the United States Immigration and Customs Enforcement ("ICE"), because of his participation in the Institution Hearing Program ("IHP")[1], and because of his public safety factor. (Doc. 1-4).

For the reasons that follow, the Court will deny the habeas petition.

---

1 U.S. Department of Justice, Federal Bureau of Prisons, Program Statement 5111.04, Institution Hearing Program (May 23, 2017), https://www.bop.gov/policy/progstat/5111.04_cn1.pdf (last visited Sept. 15, 2026).

## I. **Background**

### A. Neira's Criminal History

Neira is serving a 36-month term of imprisonment imposed by the United States District Court for the Eastern District of Missouri for his conviction of conspiracy to distribute and possess with intent to distribute controlled substances, including fentanyl, cocaine, and methamphetamine. (Doc. 9-2, Declaration of BOP Case Manager Tyler Thomas ("Thomas Decl."), at 2 ¶ 3; Doc. 9-3, Public Information Inmate Data). According to BOP documentation submitted by Respondent, Neira's sentence commenced on August 4, 2025, and his projected release date, via the First Step Act ("FSA"), is November 17, 2027. (*Id.*). However, a review of the BOP's inmate locator indicates that Neira's projected release date is now November 7, 2027.[2]

### B. Administrative Remedy History

The Administrative Remedy Generalized Retrieval reveals that, while in BOP custody, Neira filed one administrative remedy. (Doc. 9-4, Administrative Remedy Generalized Retrieval).

On June 16, 2026, Neira filed administrative remedy 1282249-F1 with the institution, requesting an individualized prerelease custody review. (Doc. 9-4, at 3). The institution denied the remedy. (*Id.*). Neira did not appeal to the Regional or Central Offices. (*See id.*).

---

[2] *See* Federal Bureau of Prisons' Inmate Locator, https://www.bop.gov/inmateloc/ (searching Inmate Number 18394-511) (last visited Sept. 15, 2026).

C. First Step Act Time Credits

Neira has earned time credits under the First Step Act. (Doc. 9-2, Thomas Decl. at 3 ¶ 10; Doc. 9-5, Individualized Needs Plan; Doc. 9-6, FSA Time Credit Assessment). The BOP conducted a First Step Act Time Credit Assessment on July 16, 2026. (*Id.*). Neira has earned 100 days of FSA time credits towards release and zero credits towards Residential Reentry Center ("RRC") or halfway house placement. (*Id.*).

D. Facts Related to the Second Chance Act

On July 8, 2025, Neira's Unit Team conducted an Individualized Needs Plan-Program Review. (Doc. 9-2, Thomas Decl. at 2 ¶ 7; Doc. 9-5). At that time, the Unit Team reviewed Neira for prerelease placement under the five factors of the Second Chance Act of 2007, codified at 18 U.S.C. §§ 3621 and 3624.[3] (*Id.*). The Unit Team considered and evaluated the five factors as follows: (1) facility resources: limited bed space of RRCs must be used judiciously to provide services to appropriate inmates; (2) offense: conspiracy to distribute and possess with intent to distribute controlled substances, including fentanyl, cocaine, and methamphetamine; (3) prisoner: good programming, clear conduct; (4) court

[3] The Second Chance Act states in pertinent part as follows:

> The [BOP] shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

*See* 18 U.S.C. § 3624(c).

statement: no recommendations regarding RRC placement; and (5) sentencing commission: United States Sentencing Commission has not issued any policy statements related to BOP prerelease RRC procedure. (Doc. 9-5, at 4). As a result of the review, the Unit Team determined that Neira did not qualify for prerelease placement under the Second Chance Act and noted that Neira had an ICE detainer lodged against him. (Doc. 9-2, Thomas Decl. at 3 ¶¶ 8-9; Doc. 9-5).

In addition, the Unit Team noted that Neira began participating in the Institution Hearing Program on August 7, 2025. (Doc. 9-2, Thomas Decl. at 3 ¶ 8; Doc. 9-5, at 2). Pursuant to BOP Program Statement 5111.04, inmates designated as participating in the IHP cannot be transferred to RRC placement or home confinement until their hearing is complete. (Doc. 9-2, Thomas Decl. at 3 ¶ 8).

E. <u>Claims Raised in the Habeas Petition</u>

In his Section 2241 petition, Neira alleges that the BOP denied him home confinement placement due to his ICE detainer, IHP status, and public safety factor and, specifically, denied him 109 days of time credits. (Doc. 1-4). As relief, Neira asks the Court to declare the BOP's denial of home confinement as unlawful, arbitrary, and contrary to the Second Chance Act, and to order the BOP to apply 109 days of time credits and adjust his prerelease custody eligibility date. (Doc. 1-5).

Respondent asserts that the Section 2241 petition should be dismissed because Neira failed to exhaust his administrative remedies. (Doc. 9). Alternatively, Respondent

argues that the petition fails on the merits because the BOP properly considered Neira for prerelease custody under the five factors of § 3621(b); Neira is not eligible for prerelease placement due to his ICE detainer, IHP status, pending unresolved charges, and public safety factor; and Neira has no legal entitlement to prerelease custody placement. (*Id.*).

## II. **Discussion**

### A. Administrative Exhaustion

While there is no statutory exhaustion requirement for habeas corpus petitions brought pursuant to Section 2241, the Third Circuit has recognized that "[f]ederal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to [Section] 2241." *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (citations omitted); *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000). Exhaustion is required because: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato*, 98 F.3d at 761-62 (citations omitted); *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981).

However, exhaustion of administrative remedies is not required where these underlying reasons for exhaustion would not be served. *See Coleman v. U.S. Parole Comm'n*, 644 F. App'x 159, 162 (3d Cir. 2016) (unpublished). For example, exhaustion is unnecessary if the issue presented is one that involves only statutory construction. *See*

*Vasquez v. Strada*, 684 F.3d 431, 433-34 (3d Cir. 2012) (citing *Bradshaw*, 682 F.2d at 1052). Exhaustion is also excused when it would be futile. *See Rose v. Lundy*, 455 U.S. 509, 516 n.7 (1982); *see also Brown v. Warden Canaan USP*, 763 F. App'x 296, 297 (3d Cir. 2019). "In order to invoke the futility exception to exhaustion, a party must 'provide a clear and positive showing' of futility before the District Court." *Wilson v. MVM, Inc.*, 475 F.3d 166, 175 (3d Cir. 2007) (quoting *D'Amico v. CBS Corp.*, 297 F.3d 287, 293 (3d Cir. 2002)).

To exhaust administrative remedies, a federal inmate must comply with the procedural requirements of the BOP's administrative remedy process, which are set forth in the Code of Federal Regulations. *See generally* 28 C.F.R. §§ 542.10-542.19. Under these regulations, an inmate shall first attempt informal resolution of his complaint with staff and, if the inmate is unable to resolve his complaint informally, he shall submit a formal, written request on the proper form to the designated staff member. *See id.* §§ 542.13-542.14. If the inmate is not satisfied with the Warden's response, the inmate shall then submit an appeal to the Regional Director, using the appropriate form. *See id.* § 542.15(a). And, finally, if the inmate is not satisfied with the Regional Director's response, then the inmate shall submit an appeal to the Office of the General Counsel, located in the BOP Central Office, using the appropriate form. *See id.* An inmate is not deemed to have exhausted his administrative remedies until his complaint has been pursued at all levels. *See id.* (explaining that an "[a]ppeal to the General Counsel is the final administrative appeal").

Here, the record reflects that Neira filed one administrative remedy—number 1282249-F1—requesting an individualized prerelease custody review. (Doc. 9-4, at 3). The undisputed record further reflects that the institution denied the remedy and Neira did not appeal to the Regional or Central Offices. (*See id.*).

Neira is challenging the validity of the BOP's policy that, according to him, categorically excludes him from placement in prerelease custody. Because his claims ostensibly involve issues of purely statutory construction, administrative exhaustion is excused. (Doc. 1-3). *See Vasquez*, 684 F.3d at 433-34 (citing *Bradshaw*, 682 F.2d at 1052).

B. <u>Prerelease Custody Claim—Merits</u>

Transfer of BOP prisoners to prerelease custody is governed by 18 U.S.C. § 3624 and 18 U.S.C. § 3621. Section 3624 states, in relevant part:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1). The decision of whether to transfer an inmate to prerelease custody, however, is left to the discretion of the BOP. 18 U.S.C. § 3624(c)(4). When exercising this discretion, the BOP must conduct an individualized assessment of whether an inmate should be transferred to prerelease custody based on the following factors:

(1) the resources of the facility contemplated;

> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence—
>
>> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>>
>> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b); *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 247 (3d Cir. 2005).

In this case, the BOP conducted the assessment required by Section 3621(b) and determined that Neira should not be transferred to prerelease custody. (Doc. 9-5, at 4). The BOP considered the five factors required to be considered under Section 3621(b) and noted that Neira's ICE detainer was an additional factor weighing against placing him in prerelease custody. (*Id.*). Although the review indicated that "[inmates] [with] ICE detainers may only apply FTCs to early release and 'remaining FSA Time Credits, if any, will not be used for transfer to prerelease custody[,]'" that statement does not negate the fact that the BOP considered the statutorily required factors. (*Id.*). Ultimately, "the statute indicates that the BOP may place a prisoner where it wishes, so long as it considers the factors enumerated in § 3621." *Woodall*, 432 F.3d at 245.

Having reviewed the assessment, the Court finds that the BOP has complied with Section 3621(b) because it is clear that it has evaluated all five factors that must be considered. Neira's habeas claim will accordingly be denied.

C. Participation in the Institution Hearing Program

Title 8 U.S.C. § 1228(a) requires the Attorney General to provide special removal proceedings in a manner which assures expeditious removal following the end of the alien's incarceration for the underlying sentence. These procedures are outlined in BOP Program Statement 5111.04, Institution Hearing Program. Foreign born, non-U.S. citizens who are serving federal sentences are eligible to participate in the Institution Hearing Program. *See* BOP Program Statement 5111.04, https://www.bop.gov/policy/progstat/5111.04_cn1.pdf (last visited Sept. 15, 2026). The IHP is a coordinated effort between the BOP, the United States Immigration and Customs Enforcement, and the Executive Office for Immigration Review. (*Id.*). The program provides procedures to ensure the maximum number of eligible inmates in BOP custody participate in the IHP while serving their sentences to allow ICE "to effect removal immediately upon completion of an inmate's sentence" (to avoid further detaining them once their criminal sentence is completed). Program Statement 5111.04, at 1, 12.

ICE lodged a detainer against Neira. (Doc. 9-2, Thomas Decl. at 3 ¶ 8; Doc. 9-5). Because of this detainer, Neira is a participant in the IHP and has participated since August 7, 2025. (Doc. 9-2, Thomas Decl., at 3 ¶¶ 8-9; Doc. 9-5). Program Statement 5111.04

provides that if an inmate is at a hearing site and participating in the IHP, he "should not be transferred until the hearing is completed." Program Statement 5110.04, at 12; *see also* Doc. 9-2, Thomas Decl. at 3 ¶ 8. Neira is participating in the IHP and, pursuant to BOP Program Statement 5111.04, he cannot be transferred until the hearing is complete. If Neira completes the IHP with a determination that he is not subject to removal, he would again be reviewed for potential referral to an RRC. Therefore, he is not presently eligible for referral to an RRC.

## III. Conclusion

For the foregoing reasons, the Court will deny the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1).

A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: September 16, 2026